UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA M. LONGO,

                Plaintiff,

    – against –

KEYBANK NATIONAL ASSOCIATION,
individually and as successor-in-interest to
UNION STATE BANK,

                Defendant.

**OPINION AND ORDER**

18 Civ. 1945 (ER)

Ramos, D.J.:

In 1993, Barbara Longo opened two certificate-of-deposit accounts (sometimes referred to as "CDs") with Fourth Federal Savings Bank ("FFSB"). The accounts, by their express terms, were to accrue interest monthly and renew automatically every 60 months.

In 2002, Union State Bank ("USB") acquired FFSB and its accounts, including Longo's. However, shortly after acquiring FFSB, USB stopped paying interest on Longo's accounts.

In 2008, KeyBank National Association ("KeyBank") acquired USB and, consequently, Longo's accounts. Like USB, KeyBank did not pay interest on Longo's accounts. Eventually, in late 2013, KeyBank escheated Longo's accounts to the State of New York.

In 2018, Longo brought the instant suit, alleging breach of contract claims against KeyBank as an individual and successor-in-interest to USB for failing to pay interest on her accounts and for eventually escheating the accounts to the State of New York.

In lieu of a formal answer, KeyBank has moved to dismiss Longo's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, KeyBank's motion is DENIED.

## I. BACKGROUND[1]

In 1993, Plaintiff Barbara Longo opened two CD accounts with FFSB. One account, ending in 2462 ("Account 2462"), contained $151,186.48; the other account, ending in 2463 ("Account 2463"), contained $104,114.80. Doc. 4 ¶¶ 7–8. The CDs provided that each account would accrue interest at a rate of 5.2% per annum, and that FFSB would distribute earnings on the last business day of each month for an initial term of 60 months, at which point each account would mature. Doc. 4-1; *see also* Doc. 4 ¶ 9. The "Initial Maturity Date" for both accounts was February 27, 1998. Doc. 4 ¶¶ 7–8. Each CD contained the same provision explaining what would happen following the Initial Maturity Date:

> AUTOMATIC RENEWAL. *This account shall be automatically renewed at the close of business on the Initial Maturity Date or the maturity date of any Renewal Term* (rate of earnings on any renewal term will be the rate in effect for the particular account class at that time) unless (1) withdrawn within the 7-day period referred to in Section 5[2] . . . or (2) at least 15 days prior to any such date, the Bank gives written notice to the Accountholder that this account will not be renewed. In such event, the account will be converted to a regular savings account and receive earnings at the rate then paid on regular savings accounts.

Doc. 4-1 (emphasis added); *see also* Doc. 4 ¶ 9. By its terms, the provision admits of no limitation on the number of times an account may be renewed automatically.

On October 31, 2002, USB acquired FFSB. Doc. 4 ¶ 10. Around that same time, USB provided Longo with a pamphlet titled "What the [USB] acquisition of the [FFSB], Yonkers Branch means to you." *Id.* ¶ 12; *see also* Doc. 4-2. The pamphlet provided that all FFSB accounts would be converted to USB accounts by close of business on October 31, 2002, and,

---
[1] The following facts are drawn from the allegations in Longo's complaint, which the Court accepts as true for the purpose of evaluating KeyBank's motion to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also draws from and considers the exhibits attached to her complaint, as well as documents incorporated by reference therein. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2] Under Section 5 of each CD, Longo was free to withdraw funds without penalty if she did so within 7 days of an account's maturity date. With limited exceptions irrelevant to this Opinion, any withdrawals occurring outside of this outside of this 7-day window would incur a penalty from FFSB.

relevant here, USB included the following representation in the pamphlet's questions-and-answers section:

> Q. Will there be any rate or term changes to my [C]ertificates of Deposit (CDs)?
> A. No, there will be no changes to your CDs. All terms and conditions will remain the same.

Doc. 4-2 at 2.

Notwithstanding the representation made by USB, in February 2003 USB stopped paying interest on Longo's two accounts without providing notice to her. Doc. 4 ¶¶ 23, 26.

Approximately five years later, on January 18, 2008, KeyBank acquired USB. *Id.* ¶ 13. That same day, KeyBank provided Longo with a booklet titled "Welcome to KeyBank." *Id.* ¶¶ 14–15; Doc. 4-3. According to the booklet, USB accounts automatically transferred to KeyBank on January 18, 2008. The booklet represented to the former USB accountholders that they would continue earning the interest rate initially guaranteed on their fixed-rate CD accounts throughout the remainder of the accounts' terms; that the CD accounts upon maturity would be renewed at the market rates then in effect; and that there would be no changes to the accounts during the current term other than a possible change in interest payment frequency. Doc. 4-3 at 4, 25–27.

On June 30, 2011, Longo received a letter from KeyBank regarding the status of Account 2462 that stated in relevant part:

> State Law requires KeyBank to transfer the balance of any account that has had no activity including withdrawals and deposits, or acknowledgment initiated by KeyBank's customer within the last THREE (03) years to the Department of Unclaimed Funds for that customer's state.[3] PLEASE NOTE THAT THIS INCLUDES ALL CERTIFICATE OF DEPOSIT ACCOUNTS INCLUDING THOSE THAT RENEW AUTOMATICALLY.

---

[3] "States as sovereigns may take custody of or assume title to abandoned personal property as *bona vacantia*, a process commonly . . . called escheat." *Delaware v. New York*, 507 U.S. 490, 497 (1993).

Doc. 4-4. KeyBank explained that its records indicated a lack of activity on Longo's part with respect to Account 2462, and it warned her of its plan to remit to the Department of Unclaimed Funds the balance of Account 2462 absent her response to the notice. *Id.* KeyBank instructed Longo that if she wished to avoid the transfer of her funds, she should complete and return the response form attached to its letter by August 19, 2011. *Id.*

At some point in August 2011, Longo completed, signed, and hand-delivered to KeyBank at its branch in Yonkers, New York, the response form attached to the letter. At this time, she also directed KeyBank not to escheat Account 2462 to the State of New York. Doc. 4 ¶ 18.

On September 30, 2011, KeyBank mailed Longo another letter, this time concerning Account 2463. *Id.* ¶ 19. Like the letter regarding Account 2462, this letter informed her that it would escheat Account 2463 to the Department of Unclaimed Funds absent her response. Longo completed, signed, and mailed to KeyBank the response form attached to this letter. *Id.* ¶ 20.

Between November 2011 and January 2012, Longo met several times with KeyBank Assistant Branch Manager Boby Basu ("Basu") at its Yonkers branch to confirm that KeyBank had received her letter responses. *Id.* ¶ 21. During these meetings, Mr. Basu confirmed to Longo that KeyBank had received her responses and assured her that her CD accounts would remain active. *Id.*

In November 2013, despite Mr. Basu's representations to Longo and without notice to her, KeyBank escheated the balance of Longo's CD accounts to the State of New York. *Id.* ¶ 22.

In October 2014, Longo issued a formal demand to KeyBank, requesting that KeyBank pay the outstanding interest owed on her CD accounts. *Id.* ¶ 23.[4]

---

[4] During a pre-motion conference with the Court, Longo confirmed that the State of New York had returned to her the amounts previously escheated by KeyBank.

On March 26, 2016, KeyBank mailed Longo a letter, seemingly in response to a complaint filed by Longo to the Consumer Financial Protection Bureau. *See* Doc. 4-7. In this letter, KeyBank explained that, according to its records, Accounts 2462 and 2463 were received from USB in 2008 while they were already at their "final maturity status." *Id.* KeyBank explained that "[f]inal [m]atured accounts do not roll over into a new term," and maintained that the final maturity date for the two accounts was February 27, 2003. *Id.*[5] Consequently, according to KeyBank, "no interest would have accrued past the final maturity date of February 27, 2003." *Id.*

On March 9, 2018, Longo filed the instant action, asserting three claims: (1) breach of contract against KeyBank in its capacity as successor-in-interest to USB for failure to pay interest on Longo's accounts past February 27, 2003; (2) breach of contract against KeyBank individually for failure to pay interest on Longo's accounts from the time it acquired her accounts on January 18, 2008, through the present; and (3) breach of contract against KeyBank individually for escheating her account to the State of New York without warning. *Id.* ¶ 25–31.

On May 29, 2018, KeyBank filed a motion to dismiss Longo's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 14.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

---

[5] The Court notes that the CDs attached to Longo's complaint do not contain "final maturity dates." *See* Doc. 4-1.

*Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## III. DISCUSSION

### A. Choice of Law

At the outset, the Court must determine the source of law that applies to the instant dispute. "Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Here, the Court sits in the State of New York, and its jurisdiction is predicated on diversity of citizenship. *See* Doc. 4 ¶ 5; 28 U.S.C. § 1332. Thus, the Court will apply New York choice-of-law rules.[6]

Under New York choice-of-law rules, "the interpretation and validity of a contract is governed by the law of the jurisdiction which is the 'center of gravity' of the transaction." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999) (citation omitted). To determine the center of gravity, courts generally consider "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 642 N.E.2d 1065, 1068 (N.Y. 1994) (internal quotation marks omitted).

Here, Longo's complaint does not reveal the location of the contracts' negotiation. However, it is clear that New York is central to this dispute: Longo is domiciled in Bronx County, New York. Longo interacted with FFSB's branch in Yonkers, New York, with respect to her CDs.[7] USB, a New York banking corporation, acquired FFSB and Longo's accounts. KeyBank, a citizen of Ohio with several locations in New York, acquired USB and Longo's

---

[6] In its moving papers, KeyBank states that the contract governing Longo's claims contains an Ohio choice-of-law provision. *See* Def.'s Mem. of Law in Supp. of Summ. J. ("Def.'s Mem.") at 4 n.3. However, KeyBank does not cite to any portion of the complaint or its accompanying papers in support of this assertion. And, in any event, KeyBank nonetheless concedes that application of New York's choice-of-law rules is proper here. Accordingly, the Court will disregard KeyBank's unbuttressed assertion.

[7] The Court notes that Longo's complaint does not state whether she opened the CD accounts in New York.

7

accounts. Longo went to KeyBank's Yonkers branch several times to meet with KeyBank employees regarding her accounts. And, finally, KeyBank escheated Longo's accounts to the State of New York. Given Longo's domicile, KeyBank's places of business, the location of the CD accounts, and the performance of the parties in support of the transaction, the Court readily concludes that New York is the "center of gravity" of the transaction at issue and, therefore, New York law applies.

> B. **Longo's Claims against KeyBank for Failure to Pay Interest**

Turning to the merits, KeyBank argues that Longo's claims for breach of contract are time-barred because her claims accrued when KeyBank's predecessor, USB, stopped paying interest in 2003. The Court disagrees.

In general, Section 213(2) of the New York Civil Practice Law and Rules prescribes the statute of limitations for breach of contract claims. Specifically, Section 213(2) provides that "[t]he following actions must be commenced within six years: An action upon a contractual obligation or liability, express or implied." N.Y. C.P.L.R. 213(2) (McKinney 2004); *see also Garcia v. Chase Manhattan Bank, N.A.*, 735 F.2d 645, 648 (2d Cir. 1984) ("An action for breach of contract must be brought within six years of the accrual of the cause of action."). Importantly, "New York does not apply the 'discovery' rule to statutes of limitations in contract actions. Rather, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury." *ACE Sec. Corp. v. DC Structured Prods., Inc.*, 36 N.E.3d 623, 628 (N.Y. 2015) (citations and some internal quotation marks omitted).

Here, KeyBank argues that Longo's breach of contract claim against KeyBank as successor-in-interest to USB accrued in February 2003 when USB stopped paying interest on her

8

two CD accounts, and that her claim against KeyBank in its individual capacity accrued in January 2008 when KeyBank acquired her accounts and failed to make interest payments. Because both events occurred more than six years ago, KeyBank argues that Longo's claims are time-barred.

Longo disagrees and in support of her position relies on Section 3-122(2) of New York's version of the Uniform Commercial Code ("U.C.C."), which provides that "[a] cause of action against the obligor of a demand or time certificate of deposit accrues upon demand, but demand on a time certificate may not be made until on or after the date of maturity." U.C.C. § 3-122(2) (McKinney 1962). In this case, Longo issued a formal demand to KeyBank in October 2014 and filed suit in 2018—well within six years of the demand. Accordingly, Longo contends that her breach of contract claims are timely.

KeyBank offers several reasons why the Court should ignore U.C.C. § 3-122(2).[8] The Court finds none persuasive. First, KeyBank cites to myriad cases interpreting New York law and holding that a cause of action accrues for monies owed pursuant to contract when the obligee possesses a legal right to demand payment from the obligor, regardless of whether an actual demand is made. Def.'s Mem. at 4–5 (citing, *e.g.*, *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190–91 (N.Y. 2012); *Maloul v. New Colom. Res., Inc.*, 15 Civ. 8719 (KPF), 2017 WL 2992202, at *4–5 (S.D.N.Y. July 13, 2017); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 233 (N.D.N.Y. 2009)). The problem with the cases, however, is evident: none involves certificates of deposits.

---

[8] KeyBank also spends much of its moving papers explaining why another statutory provision—namely, N.Y. C.P.L.R. 206(a)(2)—is inapplicable to this case. *See* Def.'s Mem. at 7–8. However, Longo disclaims any reliance on N.Y. C.P.L.R. 206(a)(2) as support for the timeliness of her claims. *See* Pl.'s Mem. at 3 n.2. Accordingly, the Court disregards KeyBank's arguments related to that statutory provision.

As an initial matter, the Court concludes that U.C.C. § 3-122(2) applies here. The U.C.C. defines a certificate of deposit as "an acknowledgement by a bank of receipt of money with an engagement to repay it." *Id.* § 3-104. Neither party to this action disputes that the certificates of deposit at issue herein fit that description.[9] *See* Doc. 4-1. And U.C.C. § 3-122(2), as the more specific statutory provision, supplants the general law surrounding breach of contract claims to hold that a cause of action on a certificate of deposit accrues on demand. *See Garcia*, 735 F.2d at 648; *see also Skaneateles Savings Bank v. Modi Assocs.*, 668 N.Y.S.2d 819, 820 (App. Div. 1998) ("The Uniform Commercial Code declares when causes of action against the various parties to a negotiable instrument accrue."). In addition to the plain text of § 3-122(2), the official comment to U.C.C. § 3-122 makes clear that the New York State Legislature, in enacting the statute, intended to treat causes of actions involving certificates of deposits differently:

> [T]he generally accepted rule [is] that [an] action may be brought on a demand note immediately upon issue, without demand, since presentment is not required to charge the maker under the original Act or under this Article. *An exception is made in the case of certificates of deposit for the reason that banking custom and expectation is that demand will be made before any liability is incurred by the bank, and the additional reason that such certificates are issued with the understanding that they will be held for a considerable length of time, which in many instances exceeds the period of the statute of limitations.* As to makers and acceptors of time instruments generally, the cause of action accrues on the day after maturity.

U.C.C. § 3-122 cmt. 1 (emphasis added). As explained in the comment above, the Legislature purposely carved out an "exception" to the "generally accepted rule" KeyBank attempts to rely on. In essence, § 3-122(2) serves as a shield for both banks and depositors: accountholders may

---

[9] Although Section 3-104 does not explain the difference between "demand" certificates and "time" certificates, the generally accepted definitions of the two types of certificates make clear that Longo negotiated originally with FFSB for time certificates of deposit. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 232 n.1 (2d Cir. 1985) ("Demand certificates of deposits are payable on demand, and time certificates of deposits are payable on a specified date, or so many days after date, upon proper indorsement. These time certificates are similar to savings deposits, but have a definite maturity, and are evidenced by a certificate. . . ." (quoting G. Munn. Encyclopedia of Banking of Finance 178–89 (F.L. Garcia rev. ed. 1973))).

not demand payment until their CD has reached maturity, which provides banks with ample opportunity to remedy any defects in the CD prior to the maturity date and protects them against accountholder demands for payment prior to the date contemplated at the time of the CD's issuance. Likewise, although "certificates are issued with the understanding that they will be held for a considerable length of time, which in many cases exceed the statute of limitations," accountholders need not worry about their CD's maturity date extending past the statute of limitations for causes of action involving their CD. Accordingly, the Court finds that the New York State Legislature in promulgating U.C.C. § 3-122(2) clearly altered New York's generally accepted rules regarding breach of contract claims as they pertain to actions involving CDs.

Given the applicability of U.C.C. § 3-122(2), the Court concludes that Longo's breach of contract claims against KeyBank are timely. Because Longo first demanded payment from KeyBank with respect to both of her accounts in October 2014, the six-year statute of limitations applicable to her claims had not yet passed when she filed suit in 2018. *See Garcia*, 735 F.2d at 649 ("The cause of action on a certificate of deposit accrues upon demand.").

Notwithstanding the text and official comment of § 3-122(2), KeyBank argues that "courts have recognized that the statute of limitations accrues upon the initial breach of a certificate of deposit contract, regardless of when a demand for payment is made." Def.'s Mem. at 8. In support of this argument, KeyBank cites two cases—*Tat Ba v. Chase Manhattan Bank, N.A.*, 616 F. Supp. 10, 12–15 (S.D.N.Y. 1984), *aff'd without opinion by* 762 F.2d 991 (2d Cir. 1985), and *Ngoc Dung Thi Tran v. Citibank N.A.*, 586 F. Supp. 203, 205–06 (S.D.N.Y. 1983). The Court finds both cases inapposite.

In *Tat Ba*, the plaintiff commenced an action in 1983 against Chase Bank and Citibank in Manhattan to recover funds and interest from CDs opened at the banks' branches in Saigon,

11

Vietnam, in 1975, months before Saigon fell to Communist forces. 616 F. Supp. at 10–11. The district court held that plaintiff's civil action—"commenced nearly nine years after the banks closed their Saigon branches and the Communist government confiscated the funds"—was barred by New York's six-year statute of limitations, notwithstanding U.C.C. § 3-122(2). *Id.* at 11, 14–15. In so holding, the court reasoned that U.C.C. § 3-122(2)'s demand requirement is excused "when a demand for the return of a deposit would be manifestly futile, as in the instance of the closing of a bank branch and the seizure of its funds by a foreign government under conditions of war or revolution." *Id.* at 11.

The facts of *Ngoc Dung Thi Tran* are substantially similar. In that case, the plaintiff sued Citibank in 1983 for funds allegedly owed to plaintiff on two CDs she opened at Citibank's Saigon, Vietnam, branch location in 1975. 586 F. Supp. 203–05. In concluding that plaintiff's claims were time-barred, the district court relied heavily on the fact that Citibank sent plaintiff a letter in 1977 explaining that "when Saigon fell in May 1975, [Citibank] transferred all the assets and liabilities of [their] former branch to the Vietnamese government and they now have responsibilities for the same." *Id.* at 204. Based on these circumstances, the court concluded that "[n]o demand at the Saigon bank was necessary, because in the circumstances it would have been futile." *Id.* at 205.

In this case, however, assuming "futility of demand" is an exception to the rule otherwise pronounced in U.C.C. § 3-122(2), the Court concludes that such "futility" is absent here. For one thing, unlike the closed bank branches in *Tat Ba* and *Ngoc Dung Thi Tran*, here there is no indication that KeyBank has ceased operations in New York City or was forced to transfer Longo's accounts to the government. And neither party in this action has alleged that KeyBank or USB unequivocally repudiated its obligation to pay interest to Longo. Indeed, Longo in her

12

complaint claims she did not receive *any* notices, written or otherwise, concerning changes to the original terms of her CD accounts. *See* Doc. 4 ¶¶ 22–23. And the original terms of Longo's CD accounts provide for the CDs' automatic renewal absent written notice to the contrary. *See* Doc. 4-1. In acquiring FFSB, USB informed Longo that there would be "no changes to [her] certificates of deposit. All terms and conditions will remain the same." *See* Doc. 4-2 at 2. Similarly, in acquiring USB, KeyBank represented to Longo that there would be no material changes to her accounts. *See* Doc. 4-3 at 4. Accordingly, assuming "futility of demand" is a cognizable exception to U.C.C. § 3-122(2)'s rule concerning when a cause of action accrues, the Court concludes that "futility of demand" is absent here.

The Court finds more persuasive the opinions in *Garcia v. Chase Manhattan Bank, N.A.*, 735 F.2d 645 (2d Cir. 1984) and *Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291 (1st Cir. 1988). In *Garcia*, the plaintiff sued Chase Bank in 1976 to recover funds from two CDs issued by Chase's Vedado, Cuba, branch in 1958, prior to the Cuban government's seizure of the branch's assets. The Second Circuit, applying U.C.C. § 3-122(2), rejected Chase's argument that plaintiff's claim was time-barred and instead concluded that "[t]he cause of action on a certificate accrues upon demand," which "occurs upon presentment and refusal to pay." *Id.* at 648. In so concluding, the Second Circuit declined to "decide whether a clear and unequivocal repudiation of the debt obligation would commence the limitations period" because it agreed with the district court below that no such repudiation had occurred.

The First Circuit in *Edelmann* reached the same conclusion under factually indistinguishable circumstances. 861 F.2d at 1301–02 (concluding that plaintiffs suit in 1985 to recover funds and interest from CDs issued in 1958 and mature in 1959 was timely because plaintiffs did not demand payment until 1985); *see also Krawitt v. KeyBank*, 871 N.Y.S.2d 842,

843 (Sup. Ct. 2008) (finding that the applicable six-year statute of limitations ran from the date of plaintiff's demand for payment on his CD, notwithstanding that the CD was issued in 1987).

KeyBank contends that both *Garcia* and *Edelmann* are inapposite because neither case involved a breach of contract that occurred *prior* to the bank's refusal to honor the CDs upon demand. Def.'s Mem. at 8. "Assuming *arguendo* that USB/KeyBank had a contractual duty to pay interest," KeyBank continues, "the breach occurred at the moment USB/KeyBank stopped paying interest in 2003." *Id.* In KeyBank's view, Section 3-122(2) does not cover breach of contract claims involving failure to make timely interest payments on CDs.

The Court finds that KeyBank's interpretation of Section 3-122(2) is narrower than the statute's plain language. Section 3-122(2) provides that "*a* cause of action against the obligor of a . . . certificate of deposit accrues upon demand"; it does not provide that "*some* causes of actions against the obligor of a certificate of deposit accrue upon demand." The better reading of the statute, therefore, is that it applies to *any* action predicated upon a CD. And for good reason, too, as the official comment to Section 3-122 makes clear that "banking custom and expectation is that demand will be made before any liability is incurred by the bank," and the statute of limitations is extended because "such certificates are issued with the understanding that they will be held for a considerable length of time, which in many instances exceeds the period of the statute of limitations." U.C.C. § 3-122 cmt. 1.

Finally, KeyBank proffers several policy reasons why this the Court should find Longo's claims time-barred. In particular, KeyBank argues that this case is "tailor-made" for application of a six-year statute of limitations because it "involves claims of alleged non-payment of interest for more than 15 years on accounts that have been transferred among three different banks over the span of 25 years," and "[i]t is highly likely that witnesses will be unavailable, memories will

14

have faded, and evidence will be lost." The Court is unpersuaded. Undoubtedly, prosecution of an action in which the critical decision at issue was made well over a decade ago poses unique challenges. However, this is a situation largely of KeyBank's own making, as both it and USB assured Longo that the terms and conditions of her CD accounts would remain the same, thus obviating the need for her to take additional steps to determine how the corporate acquisitions would affect her. Moreover, where, as here, the text of a statute is clear and unambiguous, the Court is not at liberty to substitute its own judgment for that of the New York State Legislature.[10]

Because Longo filed suit against KeyBank within six years after demanding payment from KeyBank on her two CDs, and because U.C.C. § 3-122 provides that Longo's breach of contract claims accrued upon demand, the Court concludes that her breach of contract claims against KeyBank are timely.

### C. Longo's Claim against KeyBank for Improper Escheatment

KeyBank argues that Longo's breach of contract claim against KeyBank on a theory of improper escheatment must be dismissed for two reasons: (1) Longo has not identified a contractual provision that KeyBank allegedly breached, and (2) Longo has not sufficiently pleaded damages. *See* Def.'s Mem. at 10. The Court disagrees with both arguments.

First, KeyBank argues that Longo has failed to state a breach of contract claim because she has not identified a contractual provision breached by KeyBank. KeyBank maintains that the documents received by Longo from it and USB "do not, on their face, appear to be contracts."

---

[10] The Court also notes that there are equitable doctrines, such as the affirmative defense of laches, that *may* militate against the deleterious side effects that sometimes occur during the litigation of claims involving events and decisions made long ago. *See, e.g., Maloul*, 2017 WL 2992202, at *6; *Capruso v. Vill. of Kings Point*, 16 N.E.3d 527, 532 (N.Y. 2014) ("Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. The essential element of this equitable defense is delay prejudicial to the opposing party." (internal quotation marks omitted)). However, because this defense was not raised in KeyBank's moving papers, the Court has no occasion to consider such a defense in this Opinion.

15

*See* Def.'s Mem. at 5. That much may be true. However, the answer to whether those documents and the representations included therein created contractual obligations between KeyBank and Longo is not so simple.

Here, Longo's improper escheatment claim is predicated upon KeyBank's alleged failure to perform the contractual obligations of its predecessors-in-interest. *See Recurrent Capital Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 306 (S.D.N.Y. 2012) ("Successor liability is appropriate under New York common law in four situations: (1) a buyer assumes the seller's liabilities; (2) the transaction was undertaken to defraud investors; (3) the buyer and seller engaged in a de facto merger; or (4) the buyer is a mere continuation of the seller." (footnote omitted)). Construing the facts in the light most favorable to Longo, as the Court must, Longo has sufficiently pleaded that she entered into a contract with FFSB by which her CDs would accrue interest monthly and renew automatically every 60 months; that USB acquired her accounts from FFSB and informed her that the terms of her CDs would remain the same; that KeyBank acquired her accounts from USB and, like USB, told her that the CDs' terms would stay the same; that KeyBank breached its obligation to pay interest monthly and renew the CDs automatically when it escheated her accounts to the State of New York without notice; and that Longo suffered damages in the form of lost interest as a result of KeyBank's actions. These facts, if proven, sufficiently state a breach of contract claim. *See Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach.").

Second, the Court concludes that Longo has sufficiently pleaded damages resulting from KeyBank's escheatment—namely, the interest her CD accounts would have earned from

KeyBank had KeyBank not escheated them to the State of New York. Of course, Longo's success on this claim depends entirely on whether she succeeds on her breach of contract claim for failure to pay interest. However, that Longo may only recover on the improper escheatment claim if she proves entitlement to interest payments from KeyBank—an issue already controverted in another claim—is of no moment. While Longo's breach of contract claim against KeyBank for improper escheatment is derivative of her breach of contract claim for failure to pay interest, it is not *duplicative*.[11] Accordingly, the claim may proceed.

## IV.  CONCLUSION

For the reasons set forth above, KeyBank's motion to dismiss is DENIED. The parties are directed to appear for an initial pretrial conference on January 22, 2019, at 10:00 A.M. The Clerk of Court is respectfully directed to terminate the motion, Doc. 14.

It is SO ORDERED.

Dated:  January 3, 2019
        New York, New York

                                                            Edgardo Ramos, U.S.D.J.

---

[11] Indeed, the potential damages under each claim is different. If Longo succeeds on her breach of contract claim for failure to pay interest, theoretically her recovery of interest may run only from 2003, the time at which point USB stopped paying interest on Longo's accounts, to 2013, the time at which point KeyBank may argue that it was entitled to escheat the accounts to the State of New York. Longo's recovery for improper escheatment, however, likely is limited to interest payments that were supposed to be made *after* KeyBank escheated Longo's accounts.

17